# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

METAVANTE CORPORATION,

        Plaintiff,

    v.                                        Case No. 05-CV-1221

EMIGRANT SAVINGS BANK,

        Defendant.

_____

# ORDER

Plaintiff and counterclaim defendant Metavante Corporation ("Metavante") filed a motion for an order compelling defendant and counterclaim plaintiff Emigrant Savings Bank ("Emigrant") to produce information and documents responsive to Metavante's discovery requests. Specifically, Metavante seeks an order compelling Emigrant to produce the source code of its on-line bank, EmigrantDirect. Metavante also seeks an order providing that the approximately 4,000 pages of technical specifications produced by Emigrant are not subject to disclosure restrictions set forth in a stipulation between the parties. Emigrant opposes the motion to compel its proprietary information, asserting that the request is unduly burdensome and intrusive and that the request seeks marginally relevant information.

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . ." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order

discovery of any matter relevant to the subject matter involved in the action." *Id.* The scope of relevancy under Rule 26 is broad. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (holding that relevant information "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the good cause standard under Rule 26(b)(1). *See, e.g., Sanyo Laser Products, Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003).

Here, the information sought by Metavante is relevant to the subject matter of this case. Indeed, if Metavante is able to show that Emigrant terminated the parties' technology outsourcing agreement for convenience, as opposed to for cause, and that Emigrant replaced Metavante with a new service provider or copied Metavante's system, then Metavante may be entitled to a significantly larger termination fee pursuant to the Termination Fee Schedule in the parties' agreement. The source code for EmigrantDirect would assist Metavante in ascertaining whether Emigrant's new system is a derivative of Metavante's system and whether Emigrant developed its own computer solution or used software or computer platforms created by someone else. In addition, the source code may serve as evidence pertaining to the central issue in this case, whether Emigrant terminated the parties' agreement for

cause or for convenience. For example, if the source code is substantially similar to the source code of the system Metavante provided to Emigrant under the parties' agreement, then the source code could serve as evidence that Emigrant terminated the agreement for convenience. And, conversely, if the source code substantially differs from the Metavante system's source code, then the source code could serve as evidence that Emigrant terminated the agreement for cause. As such, the information sought by Metavante appears reasonably calculated to lead to the discovery of admissible evidence because the source code may shed light on how Emigrant replaced Metavante's services and on the alleged breach of their agreement. Thus, the source code has probative value.

Emigrant contends that it would be unduly burdened if it is compelled to product the source code because the code is highly confidential and constitutes a trade secret. (Kim Decl. ¶ 18.) Emigrant notes that Metavante works with many of Emigrant's direct competitors and the court recognizes the possible harm that Emigrant could suffer if its competitors obtained confidential information concerning its source code. *See, e.g., Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978) (noting that courts have refused to permit their files to become sources of business information that might harm a litigant's competitive standing). As noted by Metavante, however, the source code would be covered by the May 14, 2007 protective order addressing the exchange of confidential information between the parties. That order provides that "[i]nformation or documents designated as confidential . . . may not be used or disclosed . . . for any purposes whatsoever other

than preparing for and conducting the litigation . . . . " (Protective Order ¶ 6.) Although Emigrant objects to the motion to compel, Emigrant does not claim that the protection from disclosure provided by the protective order is inadequate. As such, Emigrant's valid concerns about maintaining the confidentiality of its source code appear to be addressed by the protective order. *See, e.g., Greater Rockford Energy & Technology Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 533 (C.D. Ill. 1991) (courts do not "readily assume that the attorneys who signed the protective order, and who must scrupulously maintain the security of confidential information disclosed under it will ignore their duties or fail to impress the seriousness of them on all others who are permitted access to such information.").

Emigrant also contends that Metavante can obtain the information it needs to ascertain how Emigrant developed its new system by comparing the EmigrantDirect website with the prior system or with other direct banking products, by reviewing documents that would show a "paper trail" indicating that Emigrant used third parties to create its new system, or by deposing the people responsible for developing the new system. All this information has been made available to Metavante, and thus, Emigrant argues, the source code would be cumulative. In response, Metavante argues that reviewing the EmigrantDirect website would not reveal the relevant information it seeks, or "the end-to-end workflow that happens behind, before, and after the user interface to make the direct bank work." (Supp. Bradley Aff. ¶ 13.) Metavante also argues that it needs the source code before it can effectively depose the people responsible for developing Emigrant's system.

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). When protection from disclosure is sought, "the court must apply a balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the [claimed] privilege." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 559 (7th Cir. 1984). When confidential information is being sought, "the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Greater Rockford Energy & Technology Corp.*, 138 F.R.D. at 534 (quoting *Litton Industries v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 530 (E.D. Wis. 1990)). When balancing these interests, the court considers the relevance of the requested information, the demonstrated need for the information, and whether the request is burdensome. See *id*; *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) ("Before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court.") (internal quotation omitted).

Because the source code contains confidential business information, it is incumbent upon Metavante to demonstrate that the source code is sufficiently relevant and necessary to its case against Emigrant to outweigh the harm disclosure

would cause to Emigrant. *See Greater Rockford Energy & Technology Corp.*, 138 F.R.D. at 534; *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 292-93 (D. Del. 1985) ("The level of necessity that must be shown is that the information must be necessary for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories."). Considering the nature of the parties' claims in this suit, the fact that the source code appears to be the best evidence to determine whether Emigrant's new system is a derivative of Metavante's system, or whether Emigrant developed its own computer solution or used software or computer platforms created by someone else, the fact that the source code pertains to the central issue in this case, whether Emigrant terminated the parties' agreement for cause or for convenience, and the fact that the source code would be covered by the May 14, 2007 protective order, the court concludes that Metavante has demonstrated the requisite need for the source code to outweigh Emigrant's objections. *See, e.g., Dynamic Microprocessor Assocs. v. EKD Computer Sales*, 919 F. Supp. 101, 105-06 (E.D.N.Y. 1996) (granting motion to compel source code because it was needed to defend against plaintiff's claims). As such, the court will order Emigrant to produce the source code and to provide full answers to the written discovery requests, specifically, Interrogatory Nos. 2 and 3 from Metavante's Second Set of Interrogatories and Request Nos. 1 and 2 from Metavante's Third Set of Requests for Production of Documents. In order to limit the risk of inadvertent disclosure of the source code, the court suggests the parties coordinate to limit the

disclosure of the source code to only specified experts and individuals at Metavante with the requisite technical expertise needed to effectively evaluate the source code.

Metavante also seeks to remove disclosure restrictions currently protecting approximately 4,000 pages of functional specifications for the EmigrantDirect computer system that Emigrant produced to Metavante. Pursuant to a stipulation between the parties, the functional specifications can be disclosed only to Metavante's outside lawyers, outside consultants, and two specified Metavante in-house lawyers. Metavante argues that its internal technology personnel should be permitted to study the design and development documents in order to analyze whether Emigrant developed its own computer solution and data processing platform. Emigrant, however, contends that the functional specifications constitute competitively sensitive information because they show the design of the EmigrantDirect system.

Based on the current record, Metavante has not demonstrated that it cannot proceed on its claims unless its internal technology personnel are permitted to study the functional specifications already produced to Metavante's counsel pursuant to the parties' stipulation. Indeed, Metavante is not prohibited from showing the functional specifications to outside consultants. If, during its analysis of the approximately 4,000 pages of functional specifications, Metavante discovers specific documents that it believes should for some reason be reviewed by a member of its internal technology personnel, then Metavante is free to file a more detailed motion

demonstrating good cause to remove the agreed upon disclosure restrictions applying to the specific documents.

Finally, both parties have motions to seal pending before the court. Emigrant moves for leave to file under seal six exhibits to the Declaration of Robert L. Begleiter filed along with its brief in opposition to the motion to compel. Emigrant states that the exhibits contain confidential information and requests that the documents be filed under seal pursuant to paragraph 11 of the May 14, 2007 protective order. Metavante moved for leave to file under seal one exhibit to the Affidavit of Kimberly S. Vitrano filed along with its reply brief. Metavante states that the exhibit contains confidential detailed information about the operations of the banking system Metavante provided Emigrant. After reviewing the material the parties seek to file under seal, it appears that the exhibits contain information that qualifies as legitimately confidential. As such, the court concludes that good cause exists to warrant the sealing of those documents. The court notes that any party or interested member of the public can challenge the sealing of these documents pursuant to paragraph 12 of the protective order.

Accordingly,

**IT IS ORDERED** that Metavante's motion to compel (Docket # 175) be and the same is hereby **GRANTED** in part, as set forth above;

**IT IS FURTHER ORDERED** that, within 30 days from the date of this order, Emigrant shall produce complete responses to Interrogatory Nos. 2 and 3 from

Metavante's Second Set of Interrogatories and to Request Nos. 1 and 2 from Metavante's Third Set of Requests for Production of Documents;

**IT IS FURTHER ORDERED** that Emigrant's motion for leave to file under seal (Docket # 187) be and the same is **GRANTED**. Emigrant is hereby granted leave to file under seal Exhibits 17, 18, 19, 20, 23, and 26 to the Declaration of Robert L. Begleiter;

**IT IS FURTHER ORDERED** that Metavante's motion for leave to file under seal (Docket # 193) be and the same is **GRANTED**. Metavante is hereby granted leave to file under seal Exhibit I to the Supplemental Affidavit of Kimberly S. Vitrano.

Dated at Milwaukee, Wisconsin, this 5th day of May, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge