UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

METAVANTE CORPORATION,

    Plaintiff and Counterclaim-Defendant,

v.                                        Case No. 05-CV-1221

EMIGRANT SAVINGS BANK,

    Defendant and Counterclaim-Plaintiff.

_____

# ORDER

Nobody likes to pay a bill, especially when that bill belongs to someone else. However, a party must pay another's expenses when that party agrees in a legally enforceable contract to do so. In the present case, the defendant, Emigrant Savings Bank ("Emigrant"), pledged to pay the costs that the plaintiff, Metavante Corporation ("Metavante"), incurred during the litigation to enforce a contract between the two parties. The subject of this order is the nature and scope of the attorneys' fees and costs that Emigrant must pay. After a thorough examination of the appropriate case law and the records submitted by both parties, this court finds that Metavante is entitled to the full amount specified in its fee petition of $9,998,969.95.

## BACKGROUND

It has been more than four years since Emigrant removed a case filed against it in a Wisconsin circuit court by the plaintiff, commencing the federal litigation in this matter. Metavante's suit alleged that Emigrant had breached the terms of a Technology Outsourcing Agreement ("Outsourcing Agreement") two parties entered

into in August of 2004. In accordance with the relevant terms of the Outsourcing Agreement, Metavante agreed to provide Emigrant with the necessary services to allow the bank to implement "comprehensive banking products" and "electronic banking services." (Docket #79). In response to Metavante's complaint, Emigrant brought eight different counterclaims against the plaintiff stemming from Metavante's execution of the promises it made in the Outsourcing Agreement. (Docket #79). As the case involved complex issues and because hundreds of millions of dollars were at stake, an extensive period of discovery followed. For a majority of discovery, the Milwaukee law firm of Kravit Hovel & Krawczyk ("Kravit") represented the plaintiff. However, Metavante employed the Chicago based law firm of Kirkland & Ellis ("Kirkland") to champion the plaintiff's side during trial against the defendant's attorneys from the New York based law firm of Constantine Cannon ("Constantine"). While the court dismissed some of Emigrant's allegations before trial (Docket #115; Docket #426; Docket #492), all of Metavante's and a majority of Emigrant's claims proceeded for resolution via a trial. Accordingly, from May 4 through 14 and May 21, 2009, this court presided over a bench trial regarding the dispute between the two companies. Ultimately, the court found in favor of Metavante on all of its claims, and at the same time found against Emigrant on all of its remaining counterclaims. (Docket #550). As part of the court's judgment, this court ruled that Emigrant must pay Metavante's attorneys fees and costs, per the terms of the Outsourcing Agreement. However, the court granted Metavante leave to submit its fees, costs,

charges, and disbursements. On July 30, 2009, Metavante submitted its fee petition (Docket #560) to which Emigrant objected to on September 17, 2009. (Docket #584). As such, after four years of intense litigation, the court has reached its final project in the protracted battle between Metavante and Emigrant: resolving the amount of attorneys fees and costs to which Metavante is entitled.

## DISCUSSION

**A. Determining Whether Metavante is Entitled to Attorneys' Fees and Costs**

Before quantifying what fees and costs Metavante is entitled to, the court must determine whether Metavante *is entitled* to payment by Emigrant in the first place. Whether Metavante is entitled to reasonable attorneys' fees and costs pursuant to the Outsourcing Agreement is a question of substantive law. *Taco Bell Corp. v. Cont'l Cas. Co.,* 388 F.3d 1069, 1077 (7th Cir. 2004). The Outsourcing Agreement itself provides in Section 17.1 that the law governing the "validity, construction, and interpretation" of the contract and the "rights and duties of the parties" are the "internal laws of the State of Wisconsin, excluding its principles of conflict of laws." The default law in Wisconsin regarding whether a prevailing party can collect payment for its litigation expenses is the so-called American Rule that "parties to litigation are generally responsible for their own attorney fees incurred with respect to the litigation." *Re id v. Benz*, 2001 WI 106, ¶ 34 (Wis. 2001). However, Wisconsin law recognizes exceptions to the American Rule "where [a contract] provide[s] for fee-shifting." *Id.* While Wisconsin courts will "not construe an

-3-

obligation to pay attorneys' fees contrary to the American Rule unless the contract provision clearly and unambiguously so provides," *Hunzinger Constr. Co. v. Granite Res. Corp.*, 196 Wis. 2d 327, 340, 538 N.W.2d 804 (Ct. App. 1995), the primary goal in contract interpretation is to give effect to the parties' intentions when crafting the agreement based on what a "reasonable person would understand" the words of the contract to mean under the circumstances. *Danbeck v. American Fam. Mut. Ins. Co.,* 2001 WI 91, ¶10, 245 Wis. 2d 186 (2001). Moreover, Wisconsin courts have not hesitated in awarding to a prevailing party the "entire amount of fees and costs" of litigation if the unambiguous meaning of the terms of an agreement so provides. *See D.L. Anderson's Lakeside Leisure Co. v. Anderson*, 2008 WI 126, ¶101, 314 Wis. 2d 560 (2008).

Here, the language of the Outsourcing Agreement, read as a reasonable person would, unambiguously provides for cost and fee shifting to the party that "prevails" in any litigation regarding the enforcement of the agreement's terms. First, section 5.5 of the contract broadly[1] states that Emigrant is required to "pay any collection fees, court costs, reasonable attorneys' fees, and other fees, costs, and charges incurred by Metavante in collecting payment of the charges and any other

---

[1] Emigrant contends that section 5.5 of the Outsourcing Agreement is the more "specific" of the clauses related to fees in the agreement. The court disagrees. Section 5.5 broadly outlines the "Terms of Payment," including one relevant line about potential costs that could arise in collecting payment under the agreement. Section 17.8 is devoted to the specific issue of "Attorneys' Fees and Costs" and discusses the rights of the parties if a "legal action is commenced in connection with the enforcement of the agreement." To the extent sections 5.5 and 17.8 conflict, the more specific section, 17.8, governs. *See Thomsen-Abbott Constr. Co. v. City of Wausau*, 9 Wis. 2d 225, 234, 100 N.W.2d 921 (1960) ("Where there is an inconsistency between a specific provision and a general provision, the specific provision controls.")

-4-

amounts for which [Emigrant] is liable under the terms and the conditions of [the] Agreement." More specifically, section 17.8 of the Outsourcing Agreement states that if "any legal action is commenced with the enforcement" of the contract that the "prevailing party" is "entitled to costs, attorneys' fees actually incurred, and necessary disbursement incurred in connection with such action, as determined by the court." Given the language of the parties' agreement, the court can conclude that the "prevailing party," as defined by Wisconsin law, is entitled to the costs and reasonable attorneys' fees associated with the litigation over the agreement.

Both parties acknowledge that Metavante achieved success at trial and is entitled to some amount of fees and costs. However, Emigrant asserts that it should not have to pay the fees and costs associated with the litigation of Metavante's claim that it was entitled to the *full* termination fee amount under the parties' Outsourcing Agreement, as the court found that Metavante was entitled to an amount *less* than the full termination fee.[2] (Def.'s Br. 15). Emigrant warrants its claim in two ways. First, Emigrant contends that because section 5.5 of the Outsourcing Agreement provides that Emigrant must pay costs for which it is "liable" and because Emigrant was not found fully liable for the allegations it made regarding the development of "in-house" software, that the defendants should not have to pay for the costs related to that issue. However, Emigrant ignores the phrase "under the terms and

---

[2]Emigrant refers to Metavante's attempt to receive the full termination fee via its accusation that Emigrant breached the Outsourcing Agreement by developing "in-house" software as the "In-House Claim."

-5-

conditions of the Agreement" when interpreting the meaning of section 5.5. That phrase indicates that Section 5.5 states a mere truism that Emigrant must pay the costs for which is it is found liable under the agreement. To determine what attorneys' fees and costs Emigrant is "liable" for, the court must refer to the more specific section of the Outsourcing Agreement that dictates when a party is entitled to payment of its litigation costs. That section, 17.8, states that a non-prevailing party is liable to the "prevailing party" for its attorneys' fees and costs. Emigrant attempts to interpret the different sections of the Outsourcing Agreement in isolation, but when construing the contract a court must "consider the contract as a whole" when attempting to give a "reasonable meaning to each provision." *Tempelis v. Aetna Cas. & Surety Co.*, 169 Wis. 2d 1, 9, 485 N.W.2d 217 (1992). Having done that, the court can conclude that the Outsourcing Agreement does not limit what attorneys' fees and costs can be afforded to a party beyond what the contours of section 17.8 specify.

Second, in the alternative, Emigrant contends that even if section 17.8 controls the issue of what attorneys' fees and costs Metavante is liable for that the plaintiff still cannot be considered the "prevailing party" on the "In-House" issue. Emigrant's argument warrants a brief look at what constitutes a "prevailing party" under Wisconsin law. In Wisconsin, to be a "prevailing party," it is not required that a party win a lawsuit in "all respects." *Wis. Seafood Co. v. Fisher*, 2002 WI App 134, ¶ 21, 255 Wis. 2d 833 (Ct. App. 2002). Instead, a party has "prevailed" if "he or she

-6-

succeeds on any significant issue in the litigation which achieves some of the benefit sought by bringing suit." *Footville State Bank v. Harvell*, 146 Wis. 2d 524, 539-40 (Ct. App. 1988) (defining "prevailing party" in the context of the Wisconsin Consumer Act); *see also Wis. Seafood Co.* 2002 WI App at ¶ 21 (defining "prevailing party as "the party to a suit who successfully prosecutes the action or successfully defends against it . . . even though not necessarily to the extent of his original contention" in litigation over the meaning of the phrase as used in a contract); *In re Protective Placement of J.S.*, 144 Wis. 2d 670, 679 (Ct. App. 1988) (borrowing the definition for "prevailing party" from *Hensley v. Eckerhart,* 461 U.S. 424 (1983)). Where a party's claims "arise out of a common core of facts," a "losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith." *Radford v. J.J.B. Enters., Ltd.*, 163 Wis. 2d 534, 550 (Ct. App. 1991).

Applying this to the case at bar, Metavante is entitled to the litigation costs associated with the work devoted to the "In-House" issue. Metavante achieved "substantial success" at trial: the court found in favor of the plaintiff on both of the claims it set forth in its amended complaint. While Emigrant asserts that the In-House question was a separate issue and easily distinguishable from the rest of the case, as the court has noted in a previous order (Docket #556), Metavante never pleaded or otherwise presented to the court an "In-House Claim" as an independent

damages claim. Instead, the issue was merely a partial defense that Emigrant presented on the question of the appropriate termination fee owed to the plaintiff. Just because Emigrant successfully persuaded the court to reduce the termination fee does not mean that Metavante failed to succeed on a significant issue in the litigation. Moreover, the "In House" issue was not easily separable from the rest of the litigation. The factual question of whether Emigrant developed its successor system in-house was one that related to broader issues in the case, such as whether Metavante was entitled to a termination fee and several of Emigrant's counterclaims, as was evidenced by the witnesses at trial who spoke of both the "in-house" and non-in-house issues interchangeably in the same testimony. Finally, the court disagrees with Emigrant's assessment that Metavante's pursuit of the "In-House" issue was a "shot in the dark." While the plaintiff did not meet its burden in proving there was wholesale use of Metavante's processes by Emigrant, there is nothing to indicate that Metavante pursued the issue in bad faith or that the record was devoid of any evidence on the issue.[3] Because Wisconsin law only requires that a party succeed on a substantial issue in the litigation to be deemed a "prevailing party," *Radford*, 163 Wis. 2d at 550, and because Metavante has accomplished this feat, notwithstanding the fact that it was only awarded a partial amount of the termination

---

[3] In fact, the court stated in its June 3, 2009 decision regarding the "In-House" claim that "there's just simply not sufficient detail" provided by Metavante on the issue. The court summed up the issue by declaring that "this is just one of those . . . dangling participles out there that I don't think in the context of this litigation we will ever get a good solid answer to." While the plaintiff may have not won the day on this particular issue, the issue was not brought in bad faith and the plaintiff still prevailed on the two claims it set forth in its amended complaint, making it a "prevailing party" under Wisconsin law.

-8-

fee it requested, Metavante is entitled to the reasonable litigation costs related to the In-House issue. Given this and given that Emigrant's only argument for why Metavante was not a prevailing party was the defendant's contention about the "In-House" issue, the court concludes that Metavante was the prevailing party and is entitled to reasonable attorneys' fees and costs associated with the litigation.

**B.     Quantifying Metavante's Reasonable Fees and Costs**

The court proceeds to the second and potentially more complicated part of this order – determining the amount of costs and fees to award to the plaintiff. While the issue of whether a party is entitled to costs and reasonable attorneys' fees pursuant to an agreement is a matter of substantive law, under the *Erie* doctrine, the "method of quantifying a reasonable fee is a procedural issue governed by federal law in a diversity suit." *Oldenburg Group Inc. v. Frontier-Kemper Constructors, Inc.,* 597 F.Supp. 2d 842, 847 (E.D. Wis. 2009) (citing *Taco Bell Corp.,* 388 F.3d at 1077). The Seventh Circuit has provided this court with clear guidance for how to quantify "reasonable" attorneys fees and costs when a party is entitled to them pursuant to the terms of an agreement. Unlike in a *statutory* fee shifting case, in a *contractual* fee shifting case the nature and scope of a court's inquiry regarding what is a

-9-

"reasonable" fee or cost is quite limited.[4]  *Medcom v. Holding Co. v. Baxter Travenol Labs, Inc.,* 200 F.3d 518, 520 (7th Cir. 1999).  Instead of engaging in a "line-by-line analysis" of the different costs proffered by the prevailing party, the standard guiding the court when it is determining the appropriate amount of attorneys' fees and costs as required by a contractual arrangement is "commercial reasonableness."  *Balcor Real Estate Holings, Inc. v. Walentas-Phoenix Corp.,* 73 F.3d 150, 153 (7th Cir. 1996).

The Seventh Circuit has provided several factors that a court can consult to determine whether the fees and costs requested by a prevailing party are commercially reasonable.  The *Balcor* court noted that the "best evidence of the market value of legal services is what people pay for it." *Id.*  If the fees in dispute were "actually paid in the ordinary course of . . . business," strong evidence exists that what the prevailing party is requesting is commercially reasonable.  *Medcom,* 200 F.3d at 520; *see also In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir. 2001) ("[if] counsel submits bills with the level of detail that paying clients find satisfactory, a federal court should not require more"); *Oldenburg Group Inc.,* 597

---

[4] Emigrant quotes at great length in their brief to the court from Seventh Circuit precedent requiring the prevailing party to detail the costs it requests and the court to take a very active role in monitoring the costs.  However, the cases cited as authority by Emigrant uniformly are in the context of a court awarding attorneys' fees because of a fee shifting *statute*, not a fee shifting *contract*.  Under the Seventh Circuit's rules in a contractual indemnification case, "a district court will not normally engage in a detailed, hour-by-hour review of the lawyers' bills, as it might do when quantifying reasonable attorneys' fees pursuant to a fee-shifting statute."  *Oldenburg Group Inc. v. Frontier-Kemper Constructors, Inc.,* 597 F.Supp. 2d 842, 847 (E.D. Wis. 2009); *see also Rexam Bev. Can Co. v. Bolger*, No. 06-c-2234, 2008 U.S. Dist. LEXIS 96563, at * (N.D. Ill. Nov. 25, 2008) ("The parties' briefing of this issue is not particularly helpful, as both sides rely heavily on cases interpreting federal fee-shifting statutes rather than contractual fee provisions, which are analyzed differently.")  In fact, the *Medcom* court admonished the district court in that case for itemizing and scrutinizing the costs requested by the prevailing party, the exact same behavior in which the defendant invites this court to participate.  *Medcom,* 200 F.3d at 521.  The court will decline the defendant's invitation.

-10-

F.Supp 2d at 847 ("[S]o long as the bills are real bills that the party seeking indemnification actually paid in the ordinary course of business without knowing for certain that it would be able to shift fees to its adversary, the district court should find that the bills are commercially reasonable.") In addition, *Medcom* stated that if the bills are paid at a time when ultimate recovery is uncertain, reasonableness is further indicated. *Medcom,* 200 F.3d at 521. Another gauge for reasonableness is the relationship between the aggregate costs and the stakes of the case and the opposition's litigation strategy, in that, for example, requesting relatively high costs and attorneys' fees in a small stakes case would likely be commercially unreasonable. *Knoll Pharm. Co. v. Auto. Ins. Co.*, 210 F. Supp. 2d 1017 (N.D. Ill. 2002) (citing to *Medcom,* 200 F.3d at 521). The Seventh Circuit has also noted that where a prevailing party's "corporate inside counsel monitor bills submitted by outside counsel" and those bills are paid, reasonableness can be inferred. *Balcor,* 73 F.3d at 153. In addition, *Medcom* indicates that the amount of fees incurred by the opposing party is a factor to be considered in determining the reasonableness of a fee award. *Medcom*, 200 F.3d at 521. Overall, the court must look at these various factors, keeping in mind that the court's responsibility is to guard against moral hazard, "the tendency [by a prevailing party] to take additional risks or run up extra costs if someone else pays the tab." *Id.*

Applying the commercial reasonableness standard to the case at hand, the court holds that the attorneys' fees and costs that Metavante submitted with its fee

-11-

petition are reasonable, and, as such, the plaintiff is entitled to the full amount specified in its fee petition. Several facts underlie the court's conclusion. First, as the "best evidence of the market value of legal services is what people pay for it," *Balcor,* 73 F.3d at 153, the court initially notes that Metavante has presented to the court thousands of pages of "real bills" that Emigrant concedes that the plaintiff actually paid. *Id.* After an extended examination of the bills the plaintiff has presented, the court can conclude that "counsel [has] submit[ted] bills with the level of detail that paying clients find satisfactory."[5] *In re Synthroid Mktg. Litig.,* 264 F.3d at 722.

However, while the fact that "bills were paid" is a strong indication of reasonableness, "the inquiry does not necessarily stop there." *Knoll Pharm. Co.,* 210 F. Supp. 2d at 1017. The court is also persuaded that Metavante has paid all of its bills without being "certain" of the fact that it would be reimbursed for its litigation costs. *Oldenburg Group Inc.,* 597 F. Supp 2d at 847. While Emigrant protests that some of Metavante's bills were paid after its victory in this court, Emigrant's appeal is still pending in this case, making Metavante's chance of recovering the costs of litigation less than certain. *See Balcor,* 73 F.3d at 153-54 (allowing payment for appellate litigation costs in a contract that entitled the

---

[5] Although a protracted discussion about each bill is not an appropriate task for this court to undertake given the directives of *Medcom*, the court will note that all of Metavante's bills provide the amount of money charged to the company and the amount of time devoted by each expert or attorney toward the matter. While several of the older bills, particularly those from Kravit do not detail how each attorney utilized the time he or she charged Metavante for, the court notes that not only were these bills paid well before final judgment, implying a minimal risk of the "moral hazard" problem arising, the defendant has not provided any reason to doubt that the bills are atypical of those incurred by parties in high stakes litigation like the present case.

-12-

prevailing party to full compensation for the legal outlays it incurred). Moreover, at the hearing on June 3, 2009, Emigrant's attorney's asserted that they had "prevailed" on a major issue, an implied concession that Metavante's payment of its litigation costs was not done with the certainty that the plaintiff would be reimbursed. (Docket #545 at 36 - Transcript, Decision).

In addition, the court finds that the relationship between the potential stakes in the case and the litigation costs is not so out of proportion such that the costs requested are unreasonable. The defendant's counterclaims in this case made the stakes of the litigation immense, as Metavante would have been forced to pay hundreds of millions of dollars in damages as a result of an adverse judgment. The plaintiff has directed the court to several cases that indicate that the litigation costs requested in this case are not out of proportion. *See, e.g., Oldenburg Group Inc.,* 597 F. Supp 2d at 847 (finding that more than $300,000 in fees was reasonable given the $10 million dollar claim). Moreover, the defendant has not provided the court with any authority indicating that the litigation costs requested by the plaintiff are disproportionate when compared to the potential damages facing Metavante.

Moreover, the court is confident that the "moral hazard" problem is not at risk in this case. The plaintiff negotiated and received discounts on its legal services from both Kravit and Kirkland, hardly the actions of a party that was trying to "run up" the litigation cots in anticipation of the non-prevailing side paying its bills. The plaintiff also has demonstrated that its corporate counsel, a Metavante executive

-13-

who, beyond his own ethical duties as an attorney, had fiduciary duties to the corporation's board of directors and shareholders, scrutinized and monitored Metavante's legal bills and deemed them to be commercially reasonable, providing further evidence that Metavante is entitled to the amount it requested in the fee petition. *Balcor,* 73 F.3d at 153.

Perhaps most damaging for Emigrant is their failure to disclose any of the costs and attorneys' fees incurred by themselves in this litigation, which would provide a strong basis to gauge the reasonableness of Metavante's fee petition. While Emigrant is not required to disclose their own costs to demonstrate the unreasonableness of Metavante's costs, the defendant's silence on this issue is more than deafening. Seventh Circuit case law amply demonstrates that one of the best ways to demonstrate commercial unreasonableness is by comparing each parties' respective legal fees. *Medcom,* 200 F.3d at 521 (finding that the prevailing party was entitled to full indemnity, in part, because the prevailing party's litigation costs were less than those of the non-prevailing party). The defendant's silence coupled with the plaintiff's evidence that the fees charged by its Chicago attorneys are comparable with the fees charged by the defendant's New York based attorneys in other, similar litigation, persuade this court that the costs incurred by Metavante during this litigation were commercially reasonable.

Emigrant raises several arguments contesting this court's conclusion. First, the defendant argues that the rates charged by the plaintiff's attorneys were not

reasonable given the forum in which the litigation occurred.  However, an inquiry into what costs are reasonable in a given forum is inappropriate under the standard of review articulated in *Medcom:* all that is required under Seventh Circuit case law is that the fees and costs were actually paid, which the plaintiff has demonstrated. *Medcom,* 200 F.3d at 520; *see also Kallman v. Radioshack, Corp.,* 315 F.3d 731, 742 (7th Cir. 2002) ("Kallman incurred the expense for her counsel's services and paid their bill . . . this is all that is required under an indemnity clause such as the one at issue here.")  Moreover, even under Seventh Circuit case law discussing the reasonableness of a fee in a *statutory* fee-shifting case, reasonable attorney's rates are premised from the attorneys' market rates, *not* the local rates.  *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 744 (7th Cir. 2003) ("By simply declaring that the lower rate was appropriate because of the prevailing local rates in southern Illinois, without regard to the quality of services rendered by the appellants, the district court abused its discretion.")  Finally, the court finds Emigrant's argument rather disingenuous given that the defendant failed to disclose what rates its New York counsel charged in the litigation, especially when it appears likely that comparable rates were charged by both parties' attorneys.

More broadly, Emigrant objects to the litigation costs the plaintiff requests for reimbursement given that Metavante switched its representation in the litigation from Kravit to Kirkland, resulting, in what Emigrant argues, duplicative costs and unnecessary travel expenses.  Again, the court reiterates that the standard by which

-15-

the court judges Metavante's fee petition is commercial reasonableness; individual scrutiny of each cost that a prevailing party requests reimbursement for is foreclosed by *Medcom* and its progeny. *Oldenburg Group Inc.,* 597 F. Supp 2d at 847. Moreover, regardless, the court notes that the stakes in this litigation were enormous and, given the defendant's choice to employ a high power New York law firm to try the case, the court does not find it unreasonable that Metavante hired a major Chicago law firm for trial. While there may have been some duplication of efforts in the switch between Kravit and Kirkland, the fact that Metavante fully paid the attorneys' fees and litigation costs, including the costs of the experts employed by each firm, without complete confidence in reimbursement, indicates that Metavante has met its burden of proving commercial reasonableness. The court will not second guess Metavante's strategic choice to employ a second law firm for trial, given what was at stake in the case. *Id.* ("Here, OGI was exposed to over $10 million in liability, and thus hiring two firms to defend such a large claim was not patently unreasonable.")

Finally, Emigrant contends that several expenses incurred by Metavante's experts, were either duplicative or not sufficiently detailed. However, the court has already disposed of this argument, as Metavante has met its burden of proving the costs it paid were commercially reasonable.

In closing, the court notes that much of the briefing by both parties on the attorneys' fees and litigation cost issue was devoted to arguments over which party

-16-

was at fault for the tremendous costs incurred by both sides in the litigation. The court, however, will not step into the thicket of trying to resolve the "blame game." Such an effort is not only futile, but is wholly irrelevant to the cental issue of this order. The court merely concludes that Metavante, as the prevailing party in this litigation, has demonstrated that all of the attorneys' fees and costs it submitted were commercially reasonable as defined by the relevant case law. As such, Metavante is entitled to recover the full amount it submitted in its fee petition.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for attorney fees, costs, and disbursements (Docket #559) be and the same is hereby **GRANTED**; the defendant shall pay the plaintiff's attorneys' fees and costs in the amount of $ 9,998,969.95.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of November, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge