UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

METAVANTE CORPORATION,

        Plaintiff and Counterclaim-Defendant,

v.                                            Case No. 05-CV-1221

EMIGRANT SAVINGS BANK,

        Defendant and Counterclaim-Plaintiff.

_____

# ORDER

On May 25, 2011, the plaintiff, Metavante Corporation ("Metavante"), filed its second fee petition, seeking the remaining fees, costs, and disbursements related to this litigation that have been incurred and paid since July 1, 2009, including interest. (Docket #619). Unsurprisingly, and in keeping with the air of this litigation, the defendant, Emigrant Savings Bank ("Emigrant"), opposed the fee petition. (Docket #620). With the benefit of the parties' submissions, the court will resolve the pending motion in this order, which unlike this case, will be *relatively* brief.

The history of this matter is quite familiar to this court and the parties, and the court will not needlessly recount everything that has occurred over the past five and a half years in this case. However, to provide context to this decision, the court provides some background information. In May of 2009, this court presided over a bench trial regarding a breach of contract claim and a host of counterclaims all in some way related to the Technology Outsourcing Agreement ("Outsourcing Agreement") the two parties had entered into five years earlier. Ultimately, the court found in favor of Metavante on all of its claims and, at the same time, found against

Emigrant on all of its remaining counterclaims. (Docket #550). As a result, on July 30, 2009, the plaintiff filed a fee petition, asking the court to order Emigrant to "reimburse Metavante for the fees and costs Metavante incurred in pursuing its claims and defending against Emigrant's counterclaims." (Docket #560 at 9-10). Finding that Metavante was the "prevailing party" in this litigation, the court entered, pursuant to the terms of the Outsourcing Agreement, judgment for the plaintiff in the amount of "costs, attorneys' fees actually incurred, and necessary disbursements" from the beginning of the case through June 30, 2009. (Docket #598). Emigrant appealed both the court's merits and fee judgments. (Docket #563; #600).

Unfortunately for the defendant, Emigrant was entirely unsuccessful in the Seventh Circuit, with the appeals court affirming in their entirety both of the court's judgments. (Docket #613). As a result, on September 28, 2010, the court ordered that $10,069,928.17 in funds Emigrant had deposited with the Court's registry be released to Metavante, lifting a stay on the judgments issued in January of 2010. (Docket #616). Undeterred, Emigrant filed a petition for a writ of certiorari in the United States Supreme Court on November 29, 2010. After briefing on the issue of whether to grant the writ, the Supreme Court denied Emigrant's petition on March 28, 2011. On May 25, 2011, the second fee petition was filed by Metavante to recoup the costs it incurred during the appeals to the Seventh Circuit and the United States Supreme Court. (Docket #619).

Emigrant raises two arguments as to why the court should not grant Metavante's second fee petition. First, the defendant argues that Metavante's

Second Fee Petition is time-barred. (Def.'s Br. at 3). The court rejects Emigrant's argument, finding it to border on the frivolous. The plaintiff's initial fee petition sought *all* fees associated with its defense of the case. (Docket #560 at 9-10) ("Accordingly, Emigrant should be ordered to reimburse Metavante for the fees and costs that Metavante incurred in pursuing its claims and defending against Emigrant's counterclaims"); *see also* Docket #593 at 1 ("Those ongoing fees and costs, which Metavante incurred and paid in the ordinary course of business, are perfectly reasonable . . . Emigrant should have to pay them in full); *id.* at 8 ("And if Metavante does prevail on appeal, it will be entitled to its appellate fees and costs as well.") The costs associated with the lengthy appeal in this matter are "fees and costs that Metavante incurred in pursuing its claims and defending against Emigrant's counterclaims," and the court finds that Metavante asked for these fees in a timely manner as a part of its original fee petition.

Moreover, the parties entered into a stipulation, endorsed by this court on January 13, 2010, which, in return for having the judgment stayed pending the appeal to the Seventh Circuit, Emigrant deposited the sum of $11,500,000.00 with the clerk of the court. (Docket #560 at 1). As part of that agreement, Emigrant's deposit of funds in the court's registry was "absolute and irrevocable," requiring that Emigrant "relinquish all right, title, and interest in such funds," except as otherwise noted in that stipulated order. *Id.* at 2. Given that the January 13, 2010 order only contemplates Emigrant being able to assert a right in the funds in the court's registry if the appealed judgment is "reversed and set aside completely" or "vacated and

-3-

remanded for a new trial" or if there are any "funds remaining" after paying Metavante what it was owed. Emigrant does not have any right to assert any interest as to what is owed to Metavante from the court's registry and has ultimately waived the argument that the plaintiff's second fee petition is untimely. *Id.* 3-4. Additionally, the January 13, 2010 order entitles Metavante, "following the time . . . the appealed Judgment [is] affirmed," to "apply to this Court to collect any moneys owed by Emigrant to Metavante . . . from the amount deposited with the Court by Emigrant." *Id.* at 3. Given that the present time is "following the time the appealed Judgment [is] affirmed," the court's order trumps Fed. R. Civ. P. 54(d)(2)(B)'s default rules regarding timing, and Metavante's motion is timely even if future costs were not contemplated in the first fee petition because an order of the court provided a broad time period in which the plaintiff could bring its second fee petition.[1]

Emigrant's second argument is that, assuming the second fee petition is timely, the court should allow Emigrant to review Metavante's full legal bills. (Def.'s Resp. Br. at 10). Emigrant contends that such a disclosure, which was unnecessary in reviewing the first fee petition, would ensure that the bills paid are accurate and reasonable. While perhaps a slightly different argument than Emigrant made before this court and the Seventh Circuit with regard to the first fee petition,[2] the import of

---

[1] Beyond this, the court has deep misgivings about whether Fed. R. Civ. P. 54(d)(2)'s fourteen day time limit would even govern with regard to costs related to judgments rendered from the Court of Appeals and the Supreme Court for the reasons stated in Judge Thrash's well-reasoned opinion in *Dippin' Dots, Inc. v. Mosey*, 602 F. Supp. 2d 777, 781-83 (N.D. Tex. 2009).

[2] In the first go round, Emigrant argued that Metavante was *required* to disclose its full bills.

the argument is the same – "Metavante should disclose detailed bills." However, the court cannot help but invoke Yogi Berra: it's "deja vu all over again." Emigrant's argument remains as unavailing as it was two years ago. While the defendant contends that the enhanced disclosure is needed with respect to evaluating the appellate costs, as the costs were incurred outside of this court's purview and after the court determined that Metavante was the prevailing party (Def.'s Resp. Br. at 14), neither of these contentions come close to persuading the court that prolonging this litigation any further with detailed scrutiny of Metavante's legal bills is a wise choice or even needed. However, before delving into Emigrant's specific arguments, the court takes a step back to discuss the legal framework with respect to assessing attorneys' fees and costs pursuant to a contractual arrangement.

As this court noted in its November 27, 2009 order, the standard guiding the court when it is determining the appropriate amount of attorneys' fees and costs as required by a contractual arrangement is "commercial reasonableness." *Balcor Real Estate Holings, Inc. v. Walentas-Phoenix Corp.,* 73 F.3d 150, 153 (7th Cir. 1996). To determine what is "commercially reasonable," the court must not engage in a "detailed, hour-by-hour review" of a prevailing party's billing records, *Matthews v. Wis. Energy Corp.*, Case Nos. 10-2600 & 10-3571, 2011 U.S. App. LEXIS 10927 at *16 (7th Cir. Wis. June 1, 2011), as such a practice would "drain" this institution of "its most valuable resource – time." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 775 (7th Cir. 2010). Instead, the court's inquiry is guided by a series of factors, such as the moving party's willingness to pay the bills in question, whether

the bills were paid when recovery was still uncertain, the stakes of the case, the role that corporate counsel played in examining the bills that were paid, and the fees paid by the non-prevailing party. *Metavante Corp. v. Emigrant Savings Bank*, 2009 U.S. Dist. LEXIS 119054, 2009 WL 4556121, at *3 (E.D.Wis. Nov. 27, 2009). Ultimately, the court's responsibility is to guard against moral hazard, "the tendency [by a prevailing party] to take additional risks or run up extra costs if someone else pays the tab." *Medcom v. Holding Co. v. Baxter Travenol Labs, Inc.,* 200 F.3d 518, 521 (7th Cir. 1999). The Court of Appeals in this matter noted that "special circumstances may arise in which a district court has reason to doubt whether market considerations alone were sufficient to ensure reasonable fees," providing a reason to ask for additional information from the parties. 619 F.3d at 775.

Here, there are no extraordinary circumstances that have arisen to warrant further examination of the remaining attorneys' fees issue. The court has examined the evidence provided by both sides, and the court can conclude that Metavante's costs were commercially reasonable. Metavante has again submitted bills that were actually paid. The fact that this court declared Metavante a prevailing party was no guarantee in the minds of the plaintiff that two other courts would similarly agree, and, as such, the court finds that the plaintiff's lack of reassurance of indemnity warrants a finding that the amount expended was reasonable. Additionally, the court's analysis from its earlier order regarding the stakes of the litigation remain unchanged: the stakes of this litigation were immense and rightfully justified expending serious resources to defend the judgments rendered in this court. The

record indicates that Emigrant zealously appealed this matter, necessitating an equally zealous effort by Metavante to defend what it had won. Moreover, the court notes that again Metavante has received discounts for the fees incurred by its attorneys and had those fees scrutinized by corporate counsel, which, collectively, is strong evidence that the plaintiff has not tried to run up the costs of this litigation. Additionally, the court is again persuaded that the fees asked for are commercially reasonable, given that the defendant has again opted to not disclose its own fees – the court is confident that if the defendant's costs and fees were not comparable to the plaintiff's costs and fees, the court would have heard about it.

Finally, the court finds that Emigrant's argument that the court needs to ask for additional information about Metavante's legal bills because the fees were incurred outside of this court's "purview" wholly unpersuasive. The court is more than well-acquainted with the history of this case and has followed closely all events subsequent to the final judgments that were issued in this matter. Nothing related to the appellate stage of this case at all indicates that the bills Metavante incurred and paid were somehow outside of what would be commercially normal for this matter.[3] More broadly, Emigrant does not alert the court to any special circumstances that even imply that commercially unreasonable fees were incurred

---

[3] As an aside, the necessary result of Emigrant's argument is that enhanced disclosures would have to occur in any case with legal bills related to events "outside of the court's purview," such as mediation sessions or appellate work, requiring line-by-line scrutiny by the parties – and eventually the court – of a moving party's bills in a host of cases, the exact opposite result required by *Medcom* and its progeny. *Metavante,* 619 F.3d at 774 ("For the federal courts, such exercises drain the institution of its most valuable resource--time.")

by Metavante's attorneys. As the attorneys' fees paid by Metavante since June 30, 2009, are commercially reasonable, the court will grant Metavante's petition in full.

Accordingly,

**IT IS ORDERED** that Metavante's Second Fee Petition (Docket #619) be and the same is hereby **GRANTED IN FULL**; as ordered by the Final Judgment, Emigrant Savings Bank shall pay the fees, costs, and disbursements requested in Metavante's Second Fee Petition, with interest.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall forthwith – but in all events no later than June 30, 2011– release to Metavante, by wire transfer to an account specified by Metavante if the Clerk has the capability to wire funds, the amount of $1,094,496.69 from the funds Emigrant deposited in the Court's registry on or about January 15, 2010.

Dated at Milwaukee, Wisconsin, this 29th day of June, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge